RECEIVED
(Rev. 1/30/12)

OCT 2 0 2020

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA
BY: _____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

_____ DIVISION

Sterling Reneva Rivers

Plaintiff

Prisoner # 19231-075

VS.

_____

Defendant

2:20-cv-1364

Civil Action No. _____ SEC. P

Judge _____

Magistrate Judge _____

## COMPLAINT

**BY PRISONER UNDER 28 U.S.C. § 1331 OR BIVENS V. SIX UNKNOWN NAMED AGENTS OF THE FEDERAL BUREAU OF NARCOTICS, 403 U.S. 388 (1971)**

### I. Previous Lawsuits

a. Have you begun any other lawsuit while incarcerated or detained in any facility?

Yes ☒ No ☐

b. If your answer to the preceding question is "Yes," provide the following information.

1. State the court(s) where each lawsuit was filed (if federal, identify the District, if state court, identify the County or Parish):

Middle District of Tennessee and it's Nashville Division. Western District of Kentucky, Litchfield Division.

2. Name the parties to the previous lawsuit(s):

Plaintiffs: Sterling Reneva Rivers (see Attached)

Defendants: Edwards Karpells (see Attached)

3. Docket number(s): 3:12-cv-0538 (see Attached)

4. Date(s) on which each lawsuit was filed: May 25, 2012 (see Attached)

5. Disposition and date thereof [For example, was the case dismissed and when? Was it appealed and by whom (plaintiff or defendant)? Is the case still pending?]:

(see Attached)

Page 1 of 4

*(Rev. 12/20/13)*

c.  Have you filed any lawsuit or appeal in any federal district court or appeals court which has been dismissed?

Yes ☒    No ☐

If your answer to the preceding question is "Yes," state the court(s) which dismissed the case, the civil action number(s), and the reason for dismissal (e.g., frivolity, malice, failure to state a claim, defendants immune from relief sought, etc.).

_____(see Attached)_____

_____

II. a.  **Name of institution and address of current place of confinement:**

Oakdale 1 F.C.C, P.O. Box 5000, Oakdale, LA 71463

b.  Is there a prison grievance procedure in this institution?

Yes ☒    No ☐

1.  Did you file an administrative grievance based upon the same facts which form the basis of this lawsuit?

Yes ☒    No ☐

2.  If you did not file an administrative grievance, explain why you have not done so.

I've filed to a BP-10 and waiting on responses. Officials here has tried to interfer with my filings.

3.  If you filed an administrative grievance, answer the following question. What specific steps of the prison procedure did you take and what was the result? (For example, for state prisoners in the custody of the Department of Public Safety and Corrections: did you appeal any adverse decision through to Step 3 of the administrative grievance procedure by appealing to the Secretary of the Louisiana Department of Public Safety and Corrections? For federal prisoners: did you appeal any adverse decision from the warden to the Regional Director for the Federal Bureau of Prisons, or did you make a claim under the Federal Tort Claims Act?)

I've filed all the way to Regional Director and I'm awaiting response.

Attach a copy of each prison response and/or decision rendered in the administrative proceeding.

III. **Parties to Current Lawsuit:**

a.  Plaintiff, Sterling Beneva Rivers

Address Oakdale 1 F.C.C. P.O Box 5000 Oakdale LA 71463

*(Rev. 12/20/13)*

b.  Defendant, __Michael Carvajal_____, is employed as

__Regional Director__ at __Federal Bureau of Prisons__.

Defendant, __Rodney Myers_____, is employed as

__Warden__ at __F.C.C. Oakdale__.

Defendant, __D. Stout_____, is employed as

__Associate Warden__ at __Oakdale F.C.C.__.

Additional defendants, __Officer (f/n/u) Droddy, S.I.S. (f/n/u) Deville,__

__Officer White Male (f/n/u) (l/n/u)__

## IV.    Statement of Claim

State the **FACTS** of your case. Specifically describe the involvement and actions of each named defendant. Include the names of all persons involved in the incident(s) or condition(s) giving rise to this lawsuit, and the dates upon which and the places where the incident(s) and/or condition(s) occurred. **YOU ARE REQUIRED TO SET FORTH ONLY FACTUAL ALLEGATIONS. YOU ARE NOT REQUIRED TO SET FORTH LEGAL THEORIES OR ARGUMENTS.**

1. Defendant Michael Carvajal's acts of deliberate indifferent to the need of releasals to mitigate Covid-19 within Oakdale, and his wanton disregard to Plaintiff's care, safety, and health violates Plaintiff's 5th, and 8th Amendment rights to the U.S. Constitution. 2. Defendant Rodney Myers' acts of deliberate indifference to the seriousness of Covid-19, poor response to the Covid Pandemic, unreasonably exposing Plaintiff to covid and his intentional wanton disregard to Plaintiff's safety and health causing Plaintiff to contract Covid, violating Plaintiff's 5th and 8th Amendment rights to the U.S. Constitution. 3. Defendant D. Stout, officer (f/n/u) Droddy, and S.I.S. (e/w/n) Deville combined conduct on 4/8/20 of Stout causing officials to enter Vernon 1 due to retaliation against inmate Campbell, rather a legit reason, leading Droddy to unreasonably spray pepper spary in close quarter of vernon 1, during a Pandemic, burning Plaintife's eyes and causing Plaintiff to choke, and leading Deville to unreasonably point a rifle in inmates' faces, yelling, leaving Plaintiff afraid for his life, all combined violates Plaintiff's 5th and 8th Amendment rights to the U.S. Constitution. 4. Defendant Officer White Male (f/n/u) (l/n/u) unreasonably exposed Plaintiff to Covid-19 on 3-30-20, ordering Plaintiff to dispose defecated on materials of Covid positive inmate without N95 mask or PPE violating Plaintiff's 5th and 8th Amendment rights to the U.S. Constitution. 5. All Defendants caused Plaintiff extreme mental Anguish, emotional distress and/or pain and suffering by their acts and/or omissions. All conduct combined equals cruel and unusual punishment. At all times herein, all defendants acted under color of federal law. (See Additional pages Attached)

Page 3 of 4

*(Rev. 12/20/13)*

## V. Relief

State exactly what you want the court to provide to you or do for you. Make no legal arguments. Cite no cases or statutes. 1. A declaration that the acts, inacts and omissions described herein violated Plaintiff's rights under the constitution and laws of the united States, and that Plaintiff is entitled a Judgment against the Defendants. 2. Plaintiff is entitled injunctive relief ordering Defendant Carvajal to: a. Allow Plaintiff to be tested for antibodies to the Covid-19 virus. b. Waive Administrative Remedy requirement of all grievances during the Covid-19 Pandemic. c. Enjoin Defendants and their agents from retaliating against Plaintiff for seeking redress administratively or from this court. 3. Compensatory damages of $5,000,000 against Defendants Myers and Carvajal, jointly and severaly and $50,000 against remaining defendants, jointly and severaly. 4. Punitive damages of $1,000,000 against Defendants Myers and Carvajal, jointly and severaly and $25,000 against the remaining Defendants, jointly and severally. 5. A jury trial on all issues triable by jury. 6. Plaintiff's cost in this suit. 7. Any additional relief this court deems just, proper, and equitable.

## VI. Plaintiff's Declaration

a. I understand that if I am transferred or released, I must apprise the Court of my address, and my failure to do so may result in this complaint being dismissed.

b. I understand that I may not proceed without prepayment of costs if I have filed three lawsuits and/or appeals that were dismissed on grounds that the action and/or appeal was frivolous or malicious, or failed to state a claim upon which relief may be granted, unless I am in imminent danger of serious physical injury.

c. If I am located in a prison participating in the Electronic Filing Pilot Program, I consent to receive orders, notices and judgments by Notice of Electronic Filing.

Signed this ___8___ day of __October__, 20 __20__.

___19231-078___

**Prisoner no. (Louisiana Department of Corrections or Federal Bureau of Prisons)**

___Sterling R Rivers___

**Signature of Plaintiff**

Page 4 of 4

1 of 2

Attachment to Complaint pages 1 and 2

I. Previous Lawsuits
  2. Plaintiffs: Sterling Reneva Rivers
     Defendants: Edward Karpells, Douglas Merideth
Beth Gentry, Sgt. Parrish Denton, Dan Weikal, Lucas Frawley,
Sgt. Robert Cogdill, D. Blaylock, D. Steely, Lt. T. Walker,
Metropolitan Government of Nashville and Davidson County
Tennessee, M. Warren, C.O. (f/n/u) White, J. Compton.
Sgt. T. Wright, Christopher Allen, Jonathan Henson, Case
# 3:12-CV-0538
        Plaintiffs: Sterling Reneva Rivers
        Defendants: Chief Deputy Jason Woosley, Jailer
Darwin Dennison, Program Director Gail H. Basham, Lawlibrary
legal assistant Morris Basham, and Deputy Mike Langdon.
Case # 4:12-cv-P97-M
        Plaintiffs: Sterling Reneva Rivers
        Defendants: F.B.I Brett W. Shields. Case # 3:12-cv-0561
        Plaintiffs: Sterling Reneva Rivers
        Defendants: Officer Jeffrey Scott, Lebanon Police
Department. Case # 3:12-CV-0562
        Plaintiffs: Sterling Reneva Rivers
        Defendants: Darran Barnes, Braden Boucek
William Billington Bruce, John Edwards, Jeffrey Scott,
Brett W. Shields, Kathleen G. Morris, Kenneth D. Quillen,
Chris Wharton, Detective White official (f/n/u) (l/n/u) a/k/a
Koyee, L.P.D. Black Officer (f/n/u) (l/n/u), L.P.D. Stand-by
white officer (f/n/u) (l/n/u), Detective (f/n/u) Goolsby. Case
# 3:12-CV-0953
     3. 4. 5 and C. Sterling R. Rivers V. Edward Karpells et al
3:12-CV-0538, filed May 25,2012, Summary Judgment "no
genuine issues of material fact" Dismissed on March 23, 2015.
Middle District Court, Nashville Division T.N.
     Sterling R. Rivers V. Jason Woosley et al 4:12-cv-P97-M
filed on or about September 13,2012. Dismissed due to fail-
ure to prosecute on or about 2015. Western District Court,
Litchfield Division KY.
     Sterling R. Rivers V. Brett W. Shields 3:12-cv-0561
filed on or about June 1,2012, "Failure to state a claim"
Dismissed on or about June 21,2012. Middle District
Court, Nashville Division T.N.

1 of 2

Sterling R. Rivers V. Jeffrey Scott et al 3:12-CV-0562. filed on or about June 1, 2012 and Consolidated with case # 3:12-CV-0953 Sterling R. Rivers V. Darran Barnes et al, which was filed on or about 9-13-12.

Sterling R. Rivers V. Jeffrey Scott, Brett W. Shields et al 3:12-CV-0953 filed on or about September 13, 2012, Plaintiff and Defendants agreed to dismiss based on an agreement to terms in an unrelated criminal case. Agreement to dismiss was made on or about January 16, 2014. Middle District Court Nashville, Division TN.

Attachment to Complaint page 3

IV. Statement Of Claim

6. Upon information and belief, Defendant Myers Staff spreaded Covid-19 (Herein after "the virus) within Oakdale 1 F.C.C (Herein after "Oakdale") at Oakdale Louisiana. Beginning of March 2020, Educational Department (Herein after "Education") officer Consa-tine bragged about his recent trip to New York City. Several days later the virus spreaded viciously within Oakdale.

7. The first acknowledged case in Oakdale was an Education G.E.D. Student. Later, G.E.D. student Patrick Jones (Mr. Jones) contracted the virus and was the first inmate to die at Oakdale and the first within B.O.P. System.

8. March 19, 2020, Defendant Myers (Warden Myers) directed Officer Aubrey Melder (C.O. Melder) to take sick inmate Mr. Jones to the hospital. C.O. Melder set in the transporting van and hospital room (without P.P.E.) with Mr. Jones for several hours. Upon information and belief, Melder was told by Warden Myers the Mask wasn't necessary. Several hours later Melder was releaved of his watch of Mr. Jones. C.O. Melder wasn't screened, nor tested for the virus, but was allowed back at Oakdale (without P.P.E.) to intermingle with prison population.

8.5. March 13, 2020, Warden Myers had placed Oakdale on modified lockdown due to becoming alert of the Virus Pandemic, where President Trump called a "State of emergency." (See exhibit A.) Warden Myers Still sent inmates from Plaintiff's unit (Vernon 1) across the compound to intermingle with inmates of the 5 other units (without P.P.E.) inside close quarters of G.E.D. Education Classes rooms, to unicor, and to the Kitchen (for almost a week) despite Warden Myers March 13, 2020 acknowledgement of the pandemic. Plaintiff and Oakdale inmates contracted and spreaded the virus and/or was unreasonably

1 of 8

exposed thereto during that time of warden Myers actions.

9. From the time of the modified lockdown (3-13-20) until Mr. Jones' death (3-28-20) neither defendant provided Plaintiff nor any inmates with P.P.E. The first mask was provided 3-29-20; which the beginning and surge of the virus spread was from 3-13-20 to 3-28-20. 3-16-20 the first social distancing guidelines was released by the C.D.C (Center for disease Control and Prevention). Across multiple mediums many calls for the public was made to practice P.P.E. wearing, sanitative measurse, socially distance, etc, but the Defendants left Plaintiff and Oakdale cluttered up less than 3 feet of space and without P.P.E, nearly a weeks straight.

10. Nearly half Vernon 1 unit was already sick with the virus and/or symptoms thereof (200 plus inmates in unit) including Plaintiff when Warden Myers moved about 50 plus inmates from Eva 1 unit (without any P.P.E. nor any inmate being tested) into Vernon 1 unit on 3-23-20. Eva 1 inmates filled every empty bed space. Therefore, each Cubical Contained 6 inmates though the cubical's Suitablness for social distancing would require a 4 man occupancy. Imagine a bunk bed (top bed bottom bed) located in middle of a 12 x 15 4 man cubical with a bunk bed situated on each side of the middle bunk, only 3 feet of space apart. Social distancing was impossible for Plaintiff and Oakdale inmates, which aided the circulation of the virus.

11. Inmates were very sick with the virus and symptoms thereof, but they elected to fight the virus head-on because Defendant Myers was subjecting the sick inmates and their 5 cell mates to quarantine that had disciplinary characteristics of segregation and inhuman Conditions. Backed up showers, locked in a cell 24/7 for days at a time with trash every where including old soap bars and used razors and hair in the backed up shower waters of Eva 1 quarantine.

3 of 8

Defendant Myers failed to set up preventive measures to filter out the sick inmates from the non-infected, leaving Plaintiff's life unreasonably at stake to contract and spread the virus.

12. 3-31-20, once a day, officials sent by region started checking inmates' temperature, which was too late because 7 more inmates died consecutively, days later, and several inmates contracted and passed the virus already from 3-13-20 to 3-30-20. The temperature checks still didn't help detect the infected inmates.

13. There was several instances where inmates gave up on self-doctoring there selves and had to alert staff that they was infected, which most needed ventilators. The sick immate went to the hospital or Eva 1 quarantine and their 5 cell mates went Eva 1 quarantine, but officals and Defendant Myers did not have the cells they left from disinfected, restricted from traffic, nor cleaned.

14. Most of the reporting inmates sick with the virus was original Vernon 1 inmates and a few was origina Eva 1 inmates that became sick upon being mixed with Vernon inmates. On 3-24-20 sick original Vernon 1 inmate Vargus and his cubical underwent quarantine 131-132-133 cell. On 3-26-20, was an Eva 1 inmate and cubuical sent quarantine 219-220-221. On 3-28-20 original Vernon 1 inmate arbitrarily moved into cell 201-202-203 when that cell assigned inmates underwent quarantine, and the inmate became sick days later having to be put on ventilator at hospital. On 3-30-20 Vernon 1 original Ricky Crawford went to hospital being placed on ventilator, and 4 of his 5 cell mates underwent quarantine. Due to lack of training and supervision from Warden Myers, Defendant White male officer (f/n/w) (l/n/w) allowed Crowford's 5th cell mate to elude being sent to quarantine, which unreasonably exposed Plaintiff and inmates in Vernon 1 to continued circulation, contraction, and spreading of the virus due to eluding inmate's cell mate was, in fact, covid positive. That cell was 243-244-245.

3 of 8

The sick inmate Crawford of that day (3-30-20) was so sick, he struggled to Plaintiff's cubical 254 to get Plaintiff's attention. Crawford couldn't talk due to lack of oxygen, so Plaintiff's cell mate Lawrence Anderson knocked on the bunk to awaken Plaintiff. Seeing Crawford whimpering for breath, Plaintiff followed him to his cubical 245. Crawford stood by his bed, reached into his boxers trying to stop his bowels from moving. Crawford whimpered for breath infront of Plaintiff as he let off a loud, long fart, defecating in his hand, on his boxers, sweat pants and on his sheets once he pulled his hand out his sweat pants. Plaintiff apologized to his 5 cell mates and got the white male officer (S/n/u) (l/n/u) for 61 years old Crawford to be retrieved.

15. Upon Crawford being retrieved (f/n/u)(l/n/u) Officer gave Plaintiff gloves, (no N95 mask) and told Plaintiff to pack Crawford's belongings and despose of the defecated on material. Crawfords cell mates stated Crowford contracted the virus from his sick cell mate on the top bunk from him.

16. On 4-8-20, (after his 14 days of quarantine) Defendant Myers sent inmate Vargus (the 3-24-20 sick inmate) back into vernon 1, cell 131. An up-roar took place in fear of crosscontamination of inmates. Officers removed Vargus and corrected the mistake. Hours later Defendant Stout entered Vernon 1 and Inmat James Campbell voiced his concerns of crosscontamination and poor reasonable care by officials to Stout. After Defendant Stout's disregards to inmate's concern Campbell said "see yall don't really care about us," and went to his cubical. Stout became outraged, got Campbells name and room number, and left moments later.

17. Several minutes later a dozen of officers came into Vernon 1 to retrieve inmate Campbell despite Campbell had done nothing wrong. By the end of the event 5 plus of the nearly 30 officers jumped Campbell and (f/n/u) Droddy a female officer still spraied pepper spray on Campbell in the poorly ventilated close quarters of Vernon 1 causing Plaintiff eyes burn, and ~~choking~~ Choking.

18. After Campbell was already taken out in hand cuffs and nothing else was going on Defendant (f/n/u) Deville entered Vernon 1 again minutes later, yelling at inmates while pointing a rifle looking gun in inmates' faces. I was extremely afraid for my life as he walked around creating fear for no reason. No one had nor was interferring with officers' duties.

19. March 30, 2020 is the first time a nurse came into Vernon 1 inquiring if anyone had a feuer despite for 17 days every nurse and staff that entered Vernon 1 could hear the coughing, sneezing and vomitting, but never did anything nor report it.

20. March 21, 2020, Defendant Myers fed cold bag lunches to Plaintiff and Oakdale all the way until 4-1-20, after Vernon 1 inmates refused lunch and threaten a hunger strike. 3-21-20 is when Warden Myers placed the entire facility on lockdown.

21. Plaintiff attempted to use Oakdales grievance procedures but cop-outs and grievances were being thrown away and not answered by the Defendant Myers, so Plaintiff had to continue efforts to solve the matters through the process. Some of grievances started being answered but not all of them. (see Exhibit B)

22. On or about Monday April 13, 2020 Medical staff intended on conducting a covid test on an inmate that has the same last name as inmate Trammell

Steward #55891-380, but incidentally did the swab on Trammell. Wensday 4-15-20 Medical Staff Byrd entered Vernon 1 to retrieve inmate Trammell due to him being covid positive. Trammell exhibited symptoms of covid between 3-13-20 an 3-30-20 just as the entire unit almost, but from 4-1-20 to 4-15-20 he showed no symptoms. In fact, he exersiced one and two times a day and seemed very healthy. He was asymptomatic and he had been using the same phones, computers, urinals, sinks, etc, that the nearly 180 plus inmates had been using, including Plaintiff. Trammell even slept less than 4 feet from his 5 cell mates with no one in the unit being able to socially distance.

23. Despite Defendant Myers finding out that there was an asymptomatic positive inmate living around Plaintiff, Staff and Vernon 1 inmates, Warden Myers didn't immediately have Plaintiff and exposed inmates tested. Myers even denied multiple cop-out requests for the tests by many vernon inmates including Plaintiff's April 27,2020 request. (See exhibit C.) The imminent danger and treat of other possible asympto-mitics (due to Myers deliberate indifference) lasted for a month until the unit was tested 5-14-20.

24. Cubicals were broken down to a 5 man occupancy from a 6 man occupancy on 5-5-20, which the 6th man taken out each cubical and placed into a new cubical with new cell mates had not been tested nor had the new cell mates. Six men had already been less than 4 feet away from their cell mates for (3-23-20 to 5-5-20) nearly 2 months. The virus already had been surged and passed badly from 3-13-20 to 3-30-20, so the damage was done and

now continuing from the no moving around of non-tested inmates.

25. Upon information and belief, in an O.S.H.A. Complaint filed against Defendant Myers, he took Covid-19 tests of inmates at Oakdale on 5-14-20 and received the results back on 5-16-20 that showed nearly 100 inmates was Covid positive. Warden Myers intentionally and deliberately left Covid positive inmates around Plaintiff, inmates and staff for 4 days before he decided to move the positive case away from Oakdale's, non-infected population. (see exhibits_D_,_E_)

26. May 20, 2020 at 1:30 pm, a dozen Covid positive inmates was moved from plaintiff's unit. All those infected inmates had been getting their temperatures checked since 3-31-20 and still was not detected until tested.

27. Since the news stated O.S.H.A. was doing an investigation on Oakdale around 5-21-20, the next day 5-22-20, Counselor Smith was instructed by Warden Myers to have every cubical dropped to a 4 man occupancy from a 5 man occupancy. The weird thing about it is, every cell now had exactly the right amount of bed space open to make every cubical have exactly 4 men, which is 2 days after the allegedly only covid positive inmates was taken.

28. The unreasonable exposure (by Warden Myers) against Plaintiff and Vernon 1, of Covid positive inmates being left in vernon 1 for 4 days left Plaintiff's life in imminent danger of contracting and spreading the virus further. This fact is proven through the June 10, 2020 tests conducted at Oakdale by acting Complex Warden Meradieno (after Myers stepped down 5-23-20). 5 newly Covid positive inmates in vernon 1 surfaced from the 6-10-20 tests. Those 5 inmates had not been positive for no Covid tests prior to 6-10-20, but due to the unreasonable 4 day exposure by Warden Myers'

8 of 8

intentional acts of deliberate indifference and wanton disregard for Plaintiff and Oakdale, the 5 inmates became positive which very well could have been plaintiff also. The test results came back around about 6-13-20.

29. Many of the problems aforementioned could have been avoided if Defendants Myers and Carvajal would have used reasonable care by following Directives explicitly directed to Defendant Carvajal from A.G. William Barr March 26, 2020 (and April 3, 2020 Memo). A.G. Barr directed Defendant Carvajal to "prioritize" home confinement for vulnerable populations and to "move with dispatch in using home conf-inement" to mitigate the spread of the virus within prisons. A.G. Barr even specifically stated Oakdale and two other Federal prisons, but Carvajal dragged his feet, so between the March 26 directive, to April 6, 2020, 5 inmates died at Oakdale awaiting Carvajal to "move with dispatch." The Cares act signed by President Trump even gave Carvajal further authority to reduce the population of Oakdale so proper social distancing and other prevent-ive measures could be implimented but Carvajal wouldn't do it and didn't "move with dispatch," leaving Plaintiff at risk of exposure to the virus. In fact, Plaintiff actually contracted the virus and/or exhibited symptoms thereof between 3-16-20 and 3-22-20. (see exhibit F )

30. Combined together each Defendant has violated my 5th and 8th Amendment rights cruel and unusual punishment. I have no adequat redress at law for the violations herein and I will continue to be irreparably injured if not awarded the requested damages in this complaint and requested relief. Each supervisor is responsible for their own and their employees' actions and ommissions due to lack of proper training, supervision and care. Mon-etary damages will deter other officials from similar conduct. At all times herein All Defendants acted under color of Federal law.

8 of 8